IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

HILTON LLOYD KELLER,                )
                                    )
      Plaintiff,                    )
                                    )
v.                                  )          Case No. 10-cv-00676-DGW
                                    )
BRAD THOMAS, et al.,                )
                                    )
      Defendants.                   )

**ORDER**

Pending before the Court is a Motion for Summary Judgment on Exhaustion and Qualified Immunity (Doc. 37) filed by Defendants Jack Ashby, Thomas Drake, Tracy Lee, Anthony Lochhead, Matthew Purdon, Shane Sulser and Brad Thomas.  Plaintiff Hilton Lloyd Keller filed an Opposition to the motion (Doc. 47), and Defendants filed a Reply (Doc. 48).  For the reasons stated below, the motion is **GRANTED IN PART and DENIED IN PART**.

**Factual Background**

Plaintiff Hilton Lloyd Keller, an inmate currently incarcerated at Hill Correctional Center, brings this action pursuant to 42 U.S.C. § 1983.  In his Complaint, Plaintiff alleged that on December 12, 2009, while an inmate at Menard Correctional Center ("Menard"), he was attacked by his cellmate.  Prior to this attack, Plaintiff made several unsuccessful requests to Defendants Anthony Lochhead, Thomas Drake, Shane Sulser and Matthew Purdom asking to be moved away from his violent cellmate.  These requests were denied.  After the attack, Plaintiff again requested that Defendants Lochhead, Drake, Sulser and Purdom move him to a different cell.  Again, these requests were denied (Docs. 1, 5).

On January 5, 2010, Plaintiff was again attacked by his cellmate, resulting in a black eye, a swollen jaw, scratches, a cracked tooth, and a deep bite mark on his shoulder.  Plaintiff once

again asked that Defendants Lochhead, Drake, Sulser and Purdom move him, but this request was again denied.  Plaintiff then requested that Defendants Lochhead, Drake, Sulser and Purdom take him to receive medical attention, but this request was also denied (Docs. 1, 5).

Plaintiff then began a letter writing campaign to complain about this mistreatment.  One of those letters was sent to the Director of the Illinois State Police, an unnamed party.  On March 23, 2010, Plaintiff was called into a meeting with Defendant Brad Thomas, who questioned Plaintiff regarding the contents of the letter.  Defendant Thomas then told Plaintiff that because of the letter, Plaintiff would be receiving a disciplinary ticket for fighting (Docs. 1, 5).

On March 31, 2010, Plaintiff was seen by the adjustment committee, which consisted of Defendants Jack Ashby and Tracy Lee.  Despite Plaintiff's assertion that he was not an active participant in the fight, he was found guilty and sent to segregation (Docs. 1, 5).

Plaintiff attached copies of two grievances to his Complaint. The first grievance is dated February 18, 2010 (Doc. 1).  In the grievance, Plaintiff details the attacks by his cellmate on December 12, 2009 and January 5, 2010.  He explains that he made repeated requests to Defendants Sulser, Drake, Lochhead and Purdom before and after these attacks to be moved to a different cell because he feared for his safety.  Plaintiff states that his repeated requests for medical attention went unanswered.  He references letters that he sent to various staff members about his concerns, none of which were responded to.  Plaintiff states that he had previously filed this identical grievance "at least 13 times," as an emergency grievance on four occasions, and as a regular grievance on nine occasions.  Plaintiff states that he never received a response to any of the grievances (Doc. 1).

The second grievance is dated April 1, 2010. In the grievance, Plaintiff details the disciplinary charge he received on March 23, 2010 for fighting.  Plaintiff also describes his letter

writing campaign to the Director of the Illinois State Police Department, which he alleges, resulted in him being issued a disciplinary ticket from Defendant Thomas for fighting. Plaintiff further alleges that Defendant Thomas threatened to issue a disciplinary charge because of his letter writing campaign.  He also argued that his complaints were not being taken seriously by the staff at Menard (Doc. 1).

Plaintiff also attached the affidavits of three inmates who averred that correctional officers at Menard regularly destroy inmate grievances and never send responses to the grievances (Doc. 1).

On threshold review, the Court divided the Complaint into three counts:  Count I for Failure to Protect against Defendants Lochhead, Drake, Sulser and Purdom; Count II for Deliberate Indifference to Serious Medical Needs against Defendants Lochhead, Drake, Sulser and Purdom; and (3) Count III for Retaliation against Defendants Thomas, Ashby and Lee. (Doc. 5).

**Procedural History**

On May 20, 2011, Defendants Ashby, Drake, Lee, Lochhead, Purdom, Sulser and Thomas filed a Motion for Summary Judgment on Exhaustion and Qualified Immunity (Doc. 37).  In the motion, Defendants argue that there is not proof that Plaintiff filed a grievance on February 18, 2010 relating to the claims in this action.  Defendants contend that Plaintiff filed only two grievances related to these claims, and neither grievance was appealed to the Administrative Review Board ("ARB").

The first grievance, dated January 14, 2010, describes the January 5, 2010 attack by Plaintiff's cellmate.  In the grievance, Plaintiff states that, prior to this attack, his cellmate had told the Mental Health Unit that he was hearing voices which then caused him to become violent.

He alleges that he made numerous requests to "every staff member" at Menard to be relocated to a different cell because he was in fear of his life.  Despite these requests, Plaintiff stated, he was never moved to a different cell.  The grievance counselor responded to this grievance on January 26, 2010 and the Chief Administrative Officer ("CAO") provided a final response on February 1, 2010 (Doc. 37-1)

The second grievance, dated April 1, 2010, is identical to the grievance attached to Plaintiff's Complaint (Doc. 37-1). The grievance officer responded to this grievance on April 27, 2010, and the CAO provided a final response on May 3, 2010.  *Id.*

In support of the motion, Defendants attached the affidavit of Gina Allen, Chairperson of the ARB.  Ms. Allen avers that she searched ARB records and did not find any grievances submitted by Plaintiff which relate to the claims in his Complaint.  (Doc. 37-1).  Defendants maintain that Plaintiff was required to appeal the determinations of the January 14, 2010 and April 1, 2010 grievances to the ARB, and because he did not, Plaintiff failed to exhaust his administrative remedies (Doc. 37).

Defendants also contend that they are entitled to qualified immunity on Plaintiff's retaliation claim (Count III) because prison officials are permitted to discipline prisoners for violating prison rules, even in instances where the discipline impinges on a prisoner's constitutional rights.  Defendants argue that because Plaintiff was cited for a violation of prison rules, his retaliation claim must fail (Doc. 37).

In his Opposition to the motion, Plaintiff maintains that he exhausted his administrative remedies as to all counts.  Plaintiff argues that he wrote numerous grievances detailing the attacks by his cellmate on December 12, 2009 and January 5, 2010, but never received any responses to the grievances.  After realizing he could not rely on the grievances to which he had

not received responses, Plaintiff made a copy of his February 18, 2010 grievance before filing it, which was never received by the staff at Menard.  Plaintiff also suggests that his letter writing campaign to the Illinois State Police raised the issue that staff at Menard was not responding to his grievances (Doc. 47).

With respect to the grievance dated April 1, 2010 which is attached to the Complaint, Plaintiff contends that he never received the responses from the grievance counselor or CAO. Plaintiff also argues that he never received a response to the grievance January 14, 2010. Without these responses, Plaintiff contends, he was unable to appeal the decisions to the ARB. Therefore, Plaintiff maintains, he exhausted all available administrative remedies (Doc. 47).

Plaintiff further contends that Defendants are not entitled to qualified immunity on his retaliation claims because the disciplinary charge was issued in retaliation for Plaintiff exercising his constitutional right to file grievances (Doc. 47).

In their Reply, Defendants argue that Plaintiff did, in fact, receive the grievance officer and CAO responses to his January 14, 2010 and April 1, 2010 grievances as demonstrated by the Grievance Log which tracks the grievances, the response dates, and the dates the responses are sent to inmates.  Defendants contend that the Grievance Log and accompanying affidavit demonstrate that the grievance officer sent Plaintiff a final response to his January 14, 2010 grievance on February 4, 2010, and sent a final response to his April 1, 2010 grievance on May 10, 2010.  Even if Plaintiff had not received responses, Defendants maintain that Plaintiff was aware that he could request copies of his grievances through the Record Office, as he had successfully done in other matters (Docs. 48, 48-1).

*Pavey Hearing*

In light of the Seventh Circuit's opinion in *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the undersigned held a hearing in the matter on July 18, 2011 to determine whether Plaintiff had properly exhausted his administrative remedies (Doc. 51).  At the hearing, Defendants asserted that although Plaintiff's master file contained the grievances dated January 14, 2010 and April 1, 2010, those grievances were never appealed to the ARB. Thus, Defendants argued, Plaintiff did not exhaust his administrative remedies as to the claims within those grievances.  Further, Defendants maintained that there is no proof that Plaintiff filed that February 18, 2010 grievance attached to the Complaint.

In response, Plaintiff maintained that he did everything in his power to grieve the claims asserted in his Complaint. Plaintiff contended that he filed numerous grievances, beginning in December 2009, regarding his claims.  In an effort to document his efforts to exhaust his administrative remedies, Plaintiff stated that he wrote letters to the Illinois State Police concerning his complaints. Plaintiff acknowledged that he only had sixty days to file grievances pursuant to the prison regulations. Therefore, as soon as he realized he was not receiving responses to his emergency grievances within the time permitted by the regulations, he began filing multiple  grievances to ensure he received a response to one of them.

Plaintiff testified that he did not receive a response from any of his previous grievances, which prompted him to prepare the February 18, 2010 grievance.  To ensure that he had proof of this grievance, Plaintiff stated that he sent it to the law library for copies to ensure that copies would be stamped with a time and date.  On March 1, 2010, Plaintiff made three copies of the grievance.  He kept one copy for himself, filed one as an emergency grievance, and the other with his grievance counselor.  Plaintiff acknowledged that the grievance counselor spoke with

him about the grievance, which is documented in the Cumulative Counseling Summary. Plaintiff testified that he spoke to a grievance counselor one to two weeks later, who relayed to him that the grievance had been sent to Internal Affairs for review.  Plaintiff stated that he was anxious to receive a response to the grievance, but it never came.  He acknowledged that grievances had to be "appealed all the way through the process" but stated that he was prevented from appealing a grievance without first having responses at the institutional level.  As a result, Plaintiff stated that he wrote letters to the Illinois State Police expressing his concern that his concerns were not being addressed by the staff at Menard.

Plaintiff testified that he requested copies of his grievances, along with status updates, but never received any response.  He acknowledged that he successfully had exhausted his administrative remedies in other action, and that he understands the grievance procedure. At the close of the hearing, Plaintiff commented, "Only thing I can do is write. It's up to them to respond.  If they choose not to respond, then I'm locked out, and the clock, it [sic] steady ticking on me."

**Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

There is a genuine issue dispute "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

7

(1986).  "[A]ny doubt as to the existence of a genuine issue for trial should be resolved against

the moving party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986), note 2 (citing *Adickes v.*

*S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

### Analysis

### *Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act ("PLRA") provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  Exhaustion of available administrative remedies is a precondition to suit.

*Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004).  *See also Perez v. Wis. Dept. of Corr.*, 182

F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a

precondition to bringing suit" under § 1983).  Failure to exhaust administrative remedies is an

affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v.*

*Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to

filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006).  This means "using all steps that the

agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

*Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).  The law of the

Seventh Circuit emphasizes that the purpose of exhaustion is to give prison officials an

opportunity to address the inmate's claims administratively/internally, prior to federal litigation.

*See Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006); *Dole*, 438 F.3d at 809; *see also Porter v.*

*Nussle*, 534 U.S. 516, 524-525 (2002).

The Illinois Administrative Code sets out the procedure for the filing of grievances by inmates. Ill. Admin. Code tit. 20 § 504.810 *et seq*. (2003). An inmate must first attempt to resolve the complaint informally through his counselor. Ill. Admin. Code tit. 20 § 504.810(a) (2003). If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. Ill. Admin. Code tit. 20 § 504.810 (2003). The grievance officer is required to advise the CAO at the facility in writing of the findings on the grievance. The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. Ill. Admin. Code tit. 20, § 504.830 (2003). An inmate may appeal the decision of the CAO in writing within 30 days. Ill. Admin. Code tit. 20, § 504.850 (2003); *see also Dole*, 438 F.3d at 806-07.

Failure to exhaust is an affirmative defense on which defendants have the burden of proof. *Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005). "Because the prison employees bear the burden on exhaustion, they must do more than point to a lack of evidence in the record; rather they must 'establish affirmatively' that the evidence is so one-sided that no reasonable factfinder could find that [plaintiff] was prevented from exhausting his administrative remedies." *Schaefer v. Bezy*, 336 Fed.Appx. 558, 560 (7th Cir. 2009) (citing *Reserve Supply Corp. v. Owens-Corning Fiberglas Corp.*, 971 F.2d 37, 42 (7th Cir. 1992)).

*Availability of Administrative Remedies*

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the

prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009).  If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.*  Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba*, 458 F.3d at 684).  An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

It is undisputed that Plaintiff filed grievances on January 14, 2010 and April 1, 2010. Although Plaintiff claims to have never received institutional responses to the grievances, the Grievance Log submitted by Defendants indicates that Plaintiff received a final determination of the January 14, 2010 grievance on February 4, 2010.  The log further shows that Plaintiff received a final determination of the April 1, 2010 grievance on May 5, 2010.  Plaintiff offers no evidence, other than his own statements, that he was prevented from appealing these grievances. Accordingly, the Court finds that Plaintiff failed to exhaust administrative remedies relating to the January 14, 2010 and April 1, 2010 grievances.

The Court, however, finds that Plaintiff did exhaust his administrative remedies with respect to the February 18, 2010 grievance.  Plaintiff avers that before filing the February 18, 2010 grievance he made three copies of it in the law library in an effort to document his attempt to grieve his claims.  He contends that he filed this grievance as an emergency grievance on four occasions, and as a regular grievance on nine occasions. Yet, Menard has no record of the grievance.  Thus, the determination of whether Plaintiff exhausted his administrative remedies, then, boils down to a question of credibility.  Based upon the evidence in the record and the testimony adduced at the hearing, the Court finds credible Plaintiff's statement that he filed this grievance but never received a response to it. Plaintiff's hearing testimony makes it clear that he

is well-versed with prison regulations regarding the grievance procedure. Plaintiff's testimony is further supported by evidence that this grievance, was in fact, time and date stamped on March 1, 2010, the date he alleged to have filed the grievance. Furthermore, the Cumulative Counseling Summary submitted by Defendants demonstrates that Plaintiff spoke with a grievance counselor on March 15, 2010 regarding this grievance. The Court does not suggest that the prison officials interfered with Plaintiff's attempt to file this grievance. However, the fact remains that Plaintiff did everything he could to perfect his appeal. *See Dole*, 438 F.3d at 809 (a remedy can be unavailable to prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his remedies). Therefore, the Court finds that Plaintiff is deemed to have exhausted his administrative remedies relating to the February 18, 2010 grievance.

## Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment on Exhaustion and Qualified Immunity (Doc. 37) is **GRANTED in PART and DENIED in PART**.

Plaintiff shall proceed on his claims for Failure to Protect against Defendants Lochhead, Drake, Sulser and Purdom (Count I) and Deliberate Indifference to Serious Medical Needs (Count II) against Defendants Lochhead, Drake, Sulser and Purdom. Plaintiff's claim for Retaliation against Defendants Thomas, Ashby and Lee (Count III) is **DISMISSED with Prejudice**.[1]

**IT IS SO ORDERED.**

**DATED: October 21, 2011**

**DONALD G. WILKERSON**
**United States Magistrate Judge**

---

[1]   Because the Court dismissed Count III of Plaintiff's Complaint for Retaliation, there is no need to address Defendants' Motion for Summary Judgment on Qualified Immunity as to Count III.